Please the court. I'm James Sabatini and I represent Mr. Stephen Carter, the plaintiff appellant. Mr. Carter asserts that TD Bank's decision to terminate his employment was motivated, at least in meaningful part, by one, his request for FMLA-protected paternity leave, two, his in retaliation for opposing an unlawful employment practice. TD Bank moved for summary judgment on all counts. The district court granted summary judgment. This appeal ensued. Let me address the disability claims together. The district court found that Mr. Carter established a prima facie case of both gender and disability discrimination. The court found that TD Bank satisfied its burden of producing with admissible evidence a legitimate, non-discriminatory reason for the termination. Specifically, the court found that TD Bank's investigative report, which stated in relevant part that it was plausible in November of 2019 that Mr. Stephen Carter forged Mr. Brian Carter's signature, Brian Carter is Stephen Carter's brother, when opening new business accounts for Mr. Brian Carter's business. Now, with the burden of production satisfied, we move to the third stage of the McDonnell-Douglas burden-shifting test, which is as follows. A plaintiff may, but not need, show at the third stage of the McDonnell-Douglas burden-shifting test that the employer's stated justification for its adverse action was nothing but a pretext for discrimination. A plaintiff may alternatively satisfy this burden by abusing evidence that, even if the employer had mixed motives, the plaintiff's membership in a protected class was at least one motivating factor. No, I think we know the law. I guess the issue is why is it that a substantiated allegation of improperly opening accounts and also forgery not be a sufficient basis to fire him, and what is there in the record to suggest that that was pretextual? Mr. Carter denies that he forged his brother's... Well, that could be, but there was an investigation, and they concluded that that was not a plausible denial, right? Right. The investigation, according to TD Bank, concluded that the forgery accusation was plausible, which is different from substantiating the accusation. Just because something is plausible doesn't make it true, and so the district court found that Mr. Carter denied that the plaintiff did not come forward with sufficient evidence to discredit the nondiscriminatory business reason that TD Bank provided. Mr. Carter disagrees for the following... I mean, they found completely substantiated that he opened accounts that were unauthorized accounts, right? The investigation result was it was plausible. If we turn to the district court's opinion at page 15, the district court recites verbatim what the proffered nondiscriminatory reason for the termination was, and I'll quote, defendant points to Pelican's investigation report, which found it plausible that, in November 2019, Plaintiff forged Carter's signatures when opening new accounts for Brian Carter's business. So, with regards to the evidence... But Brian Carter denied that he ever opened an account, whether it's a forgery or something else. Brian Carter denies that he authorized the opening of the account, correct? Correct. When Mr. Brian Carter was at the St. Augustine, Florida, TD Bank branch, he received information. I think he saw $100 deposited in an account that he didn't recognize, so he alerted the teller that there may be a problem. Subsequent to that, he had a conversation with his brother, and following that conversation with his brother, he told the TD Bank branch employee down in St. Augustine, there's no forgery. There's no problem. Now, Mr. Brian Carter further notified TD Bank that he was ready, willing, and able to be interviewed by the bank with regards to this incident, should it be needed. The bank never took Mr. Brian Carter's invitation up. So, getting to the evidence of pretext, and being mindful that, typically, there's never one piece of evidence that proves pretext. There's never one piece of evidence that proves pretext. Instead, all the pieces of evidence have to be viewed in their totality to determine whether or not a jury could reasonably conclude, we don't buy, we don't buy your proffered reason. But the human resources team recommended his termination. So, his termination on the recommendation of human resources is a fact in the record that the district court relied on, right? Yes. The TD Bank human resources employee recommended termination. So, what's in the record to suggest that that is pretextual? So, number one, Mr. Carter denied the forgery allegation. Number two, the denial, you're saying so his denial supports an inference that it's pretextual. He denied the forgery. He doesn't say that his brother actually opened the accounts, right? He doesn't say that his brother was actually in Connecticut when the accounts were opened, does he? I don't think the record is entirely clear on that point, but when I outline the pieces of evidence to support a finding of pretext, as I was saying earlier, they have to be viewed in their totality. I can understand the law. So, what are the, what's the evidence that supports a conclusion of pretext? So, number one, the fact that Mr. Carter denied the forgery allegation. Number two, that TD Bank failed to interview a key witness during its investigation, the key witness being Brian Carter, the alleged victim of the alleged forgery. So, he had spoken to a TD Bank employee and denied that he authorized the opening of the account, right? Right, but the investigation was led by a Ms. Pelican, and Ms. Pelican did not involve Mr. Brian Carter in connection with her investigation. It was Ms. Pelican that arrived at the conclusion that it was plausible that Mr. Stephen Carter committed the forgery of his brother's signature. What is the evidence of that? Is there pretext for discrimination? Right, so a jury... For which kind of discrimination? You're alleging four or five of them. Right, so the... What's your best shot? Which one? Discrimination for... We have gender discrimination and we have the disability discrimination. I would submit that the gender discrimination, if I had to choose the stronger of the two, it would be the gender discrimination because we have a comparator. We have a similarly situated female branch bank manager, had the same job as Mr. Carter, who admitted to an integrity policy violation that TD Bank had by opening up business accounts wherein the paperwork, there were red flags all over the paperwork, screaming out, fraud, fraud, fraud. Nevertheless, she signed off on the paperwork and the fraudulent account was opened. But she didn't open the fraudulent account. No, she signed off on the necessary paperwork for that account to get open, and as a result of that... So she failed in her job by failing to heed the warning signs, but she didn't actually do the fraudulent account. Right, but she admits... Well, there was negligence, right? The TD Bank assumed that it was negligence on her part. In other words, TD Bank didn't conduct an investigation to see if the individual had a relationship with the individual that was opening up the bank. The point here, the bank account, the point though is that that integrity policy violation that was admitted to by the female branch manager cost the bank tens of thousands of dollars, whereas here, TD Bank lost nothing. Mr. Brian Carter didn't lose any monies. The bank didn't lose any monies, and of course, Mr. Carter himself denied forging his brother's name with regards to the documents to open up the bank. Now, TD Bank claims that it honestly believed that Mr. Carter forged his brother's signature when opening his brother's business accounts. Well, if TD Bank honestly believed the accusation, then why does it couch the accusation as plausible at the time of the termination? Just because something is plausible does not make it true, and the fact that TD Bank couched the allegation as quote-unquote plausible... In your views, they have to find it beyond a reasonable doubt before they can fire him? No, it's... Is that a due process that makes it, what, by a preponderance of the evidence? No, Mr. Carter is not submitting that... So you're suggesting plausible is not enough. So why isn't that enough? It's not enough when you take into account the other pieces of evidence that Mr. Carter is relying upon to establish pretext. Well, they're different things. One is whether plausible alone is enough to fire, and plausible alone is enough to fire, right? All right, so one of the things Mr. Carter would say with regards to, well, why didn't TD Bank interview as part of its investigation the central and key witness? So they have an obligation to do an investigation that means directly interviewing people. I mean, what is the basis for saying that? And what's your best case? By not doing a full-blown investigation that involved interviewing Mr. Carter's brother, who was the victim, that that's a sign of pretext. So if the bank is accusing one of its branch managers of forgery and is conducting an investigation, a jury would want to see that the bank conducted the investigation in a fair manner and one that strikes them as consistent with common sense. All right, I think we understand. We're way over, so let's... Oh, I'm sorry. ...let's start any other questions. You've reserved two minutes for Mr. Sabatini, but we'll hear from Mr. Schmidt now. Thank you. Thank you. Thank you very much, Your Honors. Mike Schmidt for the defendant. Plaintiff's own brother, a customer at TD Bank in Florida, prompted the sequence of nondiscriminatory events that resulted in this plaintiff's employment being terminated in December of 2019. His own brother, not his supervisor, not HR, not anyone employed by TD. His brother prompted this. His brother went into the TD Bank branch in Florida five days after plaintiff says his brother supposedly opened the account and signed these opening documents up in New York where plaintiff lives. Five days after that, plaintiff tells the investigator, oh, well, my brother just must have forgotten that he not only wanted the accounts opened but actually signed documents five days earlier. He just forgot. That's what plaintiff told the investigator. After a full investigation by the bank's integrity review team, in response to the complaint by plaintiff's own brother, where plaintiff's brother said, I didn't open this. I wasn't up there. I was in Delaware. And more than that, I don't want these to remain open. I want these closed. After a full investigation by the bank's integrity review team, without any allegation in this case that anyone involved in the investigation on that integrity review team had some discriminatory animus toward that, the investigator concluded that there were six separate problems with both plaintiff's story and plaintiff's credibility and the documents that were reviewed and the individuals who were interviewed. And we keep talking about or I keep hearing about plaintiff's brother not being interviewed, not being asked questions. Plaintiff's brother is who prompted this and who talked to the management down in the St. Augustine, Florida branch. And after the investigator interviewed plaintiff, the investigator went back to talk to the senior management down in the Florida branch to confirm whether plaintiff's brother actually said what plaintiff said he said. And management down in Florida was very clear. This case is very simple. There were six conclusions derived in that investigative report beginning at Joint Appendix 205. And for purposes of summary judgment below and this appeal, Your Honors, it doesn't matter if the plaintiff says he didn't do it. We'd never have summary judgment. It doesn't matter if he says it's unfair to terminate him. It doesn't matter even if the bank's investigation was ultimately wrong. What this Court has said time and time again, as other courts have, the issue here is what motivated the cases from this Court beginning at our brief on page 22. And it's nice to be able to stand up and say, well, plausible isn't enough. They actually had to find that these allegations were absolutely true. That's not what the law requires. That's not meeting the burden that plaintiff has in demonstrating a genuine issue of material fact to withstand summary judgment. And we would say, Your Honors, that on this record, on this record, there is no evidence that a rational jury could look at and say that he was terminated because anybody had some problem with him being a male, because he asked for and received without incident three weeks of parental leave, or because he suffered some general anxiety. There are no comments about any of these protected classes anywhere on the record that were made to him. There was never a suggestion that any of these issues ever came up or were a problem by anyone who made the recommendation. Again, as Judge Sullivan, you pointed out, was made by HR. There is just simply no evidence in the record that a rational juror could hang the hat on and say this termination occurred because of discriminatory animus. And that's what this case is. This case is not an unfair termination case. This case is a discrimination case. And as this Court most recently said last year in Banks v. General Motors, which we cited at page 17 of our brief, quote, even in the discriminatory context, a plaintiff must still present more than conclusory allegations to survive a motion for summary judgment. It's not about whether plaintiff thinks that the bank didn't lose any money or didn't suffer any real harm because of the intentional act that the investor found plausible that was Mr. Sabatini, when he said that typically there is never just one piece of evidence to prove pretext. The problem here is on this record there are none. There are absolutely no facts in the record to prove pretext other than I didn't do it. And if that was sufficient, Your Honors, we would never have summary judgment. The standard is, as Judge Sullivan, you pointed out, the bank doesn't have to prove this was done beyond a reasonable doubt by a preponderance of the evidence. It is plaintiff's burden to show that there was something wrong with the investigation, that the investigator had a discriminatory motivation that tainted the investigation that somehow motivated the ultimate end of plaintiff's employment. There's nothing in the record to show that. What is in the record, again, beginning on page 205 of the Joint Appendix, are the six separate things that this investigator found was a problem and found that it was plausible to terminate this at-will employee for committing or plausibly committing these acts. Well, the conclusion was that the case was substantiated for forgery, right? Correct. That's correct, of an at-will employee. And it doesn't matter for purposes of summary judgment or this appeal, again, whether that was even true, whether that was even fair, whether that was even right or accurate. The only critical question is what motivated the employer, and is there anything in the record, let alone the plaintiff's brief, that provides facts or evidence to demonstrate that the decision-makers were motivated by the fact that he's a male, that he asked for and received three weeks of parental leave, or that he had some general anxiety, and they have failed to create a genuine issue of material fact that any of those, let alone all of them, somehow motivated HR to recommend termination after this full investigation prompted by his own brother. So the question is, is there anything in the record that the plaintiff's brief or the plaintiff's conclusory allegations of what's fair and what wasn't done and what should have been done a different way in the investigation simply don't matter? I thank you for your time. Okay. Thank you, Mr. Schmidt. Thank you. I'll hear from Mr. Sabatini for two minutes. Thank you. During a defense counsel's argument, it was brought up, the paternity leave was brought up. I'd like to address the FMLA retaliation claim in the rebuttal in light of that. So the district court held that Mr. Carter failed to show that he had exercised a right to be protected under the FMLA, and the district court's conclusion was based on a finding that he didn't follow TD Bank's internal policies with regards to how to go about requesting FMLA. Okay. Mr. Carter submits that district court's conclusion is flawed for two important reasons. Number one, the FMLA regulations don't support that finding. Don't support what finding? The finding that because Mr. Carter didn't follow TD Bank's internal policies when requesting FMLA. All right. But he was approved. He asked for it. His supervisor said, okay, that's great. Everybody else, male employees who requested it, received it without incident. What is their suggestion that this is something that the company was trying to punish? So taking FMLA leave. So what Mr. Carter is addressing on this appeal is the district court's ruling with regards to the FMLA retaliation claim, and her decision to grant summary judgment on that claim was on two grounds. One, that he didn't exercise a right because he didn't follow the internal policies of the bank, and two, that he couldn't establish the third element of the prima facie case, in other words, the causal connection. So just returning to the exercising a right, the FMLA regulations that are relevant to this would be sections 825. I don't understand. So if you are granted FMLA leave, you're supposed to... Nobody's suggesting that he should have... He was granted the leave, right? Right. But the district court... Right. So the defendant itself admitted that he requested the paternity leave, he provided the date he was going to start the paternity leave, when he was going... And they granted it, yet the defendant in its motion for summary judgment and the district court's ruling said, well, he didn't exercise... activity because he didn't follow the internal policies... Did he make the request? He did. Did he make the request for leave under the FMLA or under the bank's available policies? He didn't follow the internal policies of the bank. He made a verbal request. He didn't follow the internal policies of the bank for FMLA leave. Correct. He asked for leave and they gave it to him. I mean, the law requires you to take yes for an answer. Right. But as I was saying earlier, the district court's ruling for granting summary judgment on the FMLA retaliation claim was, one, he didn't engage in protected activity. He clearly did. So, the second basis for the court granting summary judgment on the FMLA retaliation claim was that he failed to establish a causal connection between the exercise of a right under the FMLA by requesting the FMLA and his termination. And specifically, the court concluded that there was a five-month gap between when Mr. Carter first notified the bank of his intention to take paternity leave and when he was terminated. But this conclusion ignored the evidence of the fact that retaliation began shortly after he made the paternity leave request. His direct manager routinely had phone calls with, I see him running out of time, the facts that are in support of Mr. Carter's causal connection between the protected activity and the adverse action that are laid out in the written brief. But all I'm saying is that the total demeanor changed dramatically from his supervisor. That's not an adverse action. You're not entitled to nice tone. And so, what is the adverse action? You're saying the adverse action is the firing, and that would be an adverse action. But he was told he could take the leave, and nobody said anything about it afterwards, right? Well, there was... That's the record, right? No, that's not the record. Okay. So, I can go on. Yeah, answer the question. Yes, yes. So, shortly after he makes the request for paternity leave, his direct manager starts treating him negatively. So, for example, the phone calls that they would be routinely on together went from positive to negative. The manager was berating Mr. Carter for not being in the office when, in fact, he was out on the road engaging in business development, which was part of his responsibilities. Mr. Taylor, only after Mr. Carter had requested paternity leave, contacted Human Resources to complain about Mr. Carter's job performance. Mr. Taylor did not do so before. And, in fact, Mr. Carter's job performance... Not everybody has a lovable boss. That is true. That doesn't amount to retaliation, and that doesn't support a claim, my friend. No, but what it does support is establishing a chain, if you will, a continuum. So, as soon as that request for paternity leave is made, his manager starts treating him differently. And, ultimately, that culminates in the termination. Thank you, Your Honor. Thank you. We will reserve decision. Thank you, Your Honor. Thank you. Have a nice day. That brings us to the last case on the argument calendar. That's Alford v. NFTA, Metro. Is Ms. Alford here? Oh, that's a video conference.